IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| PHYLLIS WIGGINS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 07-491-S-CWD |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## <u>Introduction</u>

Currently pending before the Court for its consideration is Petitioner Phyllis Wiggins's ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed November 13, 2007.  The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record (AR).  For the reasons that follow, the Court will remand the decision of the Commissioner.

## I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on June 1, 2004, alleging disability due to Crohn's Disease, diabetes, and

ovarian cysts.  Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) John C. Arkoosh held a hearing on July 28, 2006, taking testimony from Petitioner and vocational expert James Grissom.  (AR 376-409.)  After the hearing, Petitioner was diagnosed with a malignant metastatic brain tumor, which evidence the ALJ considered in issuing his opinion.  ALJ Arkoosh issued a decision finding Petitioner not disabled on January 24, 2007.  (AR17-23.)

Petitioner filed a timely appeal to the Appeals Council.  The Appeals Council admitted additional evidence (AR 9) concerning Petitioner's brain tumor and two medical source opinions from her treating gastroenterologist and neurosurgeon.  On September 14, 2007, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 5-13; 357-360.)  She appealed this final decision to this Court.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 52 years of age.  She has a high school education with additional vocational schooling as a paralegal, and her past relevant work includes work as a receptionist, retail sales clerk, fast food manager, general office clerk, and data entry clerk.  She claims she became disabled on August 6, 2003, and is applying for a period of disability benefits from that date up to and including January 24, 2007.[1]

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a

---

[1]  Petitioner submitted a second application for disability, and was found disabled as of January 25, 2007.  Pet. Brief at 2 n.1 (Docket No. 24.)

claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date.  At step two, it must be determined whether claimant suffers from a severe impairment.  The ALJ found Petitioner's Crohn's disease, diabetes, and ovarian cysts[2] "severe" within the meaning of the Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found Petitioner was able to perform her past relevant work as a receptionist and data entry clerk.   Having found Petitioner not disabled at step four, the ALJ did not proceed to step five.[3]

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a

---

[2]  It is noted for the record that Petitioner was diagnosed with two ovarian cysts.  On page three of the ALJ's opinion, it would appear that the ALJ only recognized her as afflicted with one cyst.  However, later in the opinion, the ALJ noted that Petitioner had two cysts.  (AR 21-22.)  Thus, to the extent Petitioner takes issue with the ALJ's failure to mention Petitioner's multiple cysts, her argument is without merit.

[3] Had the ALJ decided that the claimant demonstrated an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's

decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at the second, third, and fourth steps of the sequential evaluation process. First, Petitioner argues that the ALJ's finding at step two that Petitioner's brain tumor was not "severe" within the meaning of the Act is in error. Next, Petitioner contends that it was error at step three for the ALJ to find that her brain tumor and ovarian cysts did not equal a listed impairment, or that her multiple medical conditions and resulting complications therefrom did not, in combination, meet a listed impairment. The ALJ found that Petitioner's brain tumor was neither severe nor met a listed impairment because there was no evidence the impairment would last for twelve months, thus not meeting the duration requirement at both steps two and three.

Next, Petitioner argues that the ALJ's credibility assessment at step four was in error, because he did not provide sufficient rationale for rejecting Petitioner's subjective complaints of pain, fatigue, and difficulty concentrating caused by her medical impairments and medications,

and the resulting impact upon her physical and mental capacity to sustain work.  She also

contends that the ALJ's reasons for rejecting Petitioner's complaints of chronic diarrhea as a

result of her Crohn's disease and the impact it would have upon sustaining employment was in

error.  Accordingly, Petitioner argues that the hypothetical proposed to the vocational expert did

not include all of Petitioner's limitations that were supported by the record.  Finally, Petitioner

asserts that the medical source opinions from Petitioner's treating neurosurgeon and

gastroenterologist, which were made part of the record before the Appeals Council, were not

adequately considered.  The Court will address each of Petitioner's arguments in turn.

**A.      Severity Determination and Listing Determination.**

Petitioner was diagnosed with a malignant brain tumor on August 21, 2006, after the

administrative hearing held on July 28, 2006.  (AR 280-81, 306.)  The medical records

concerning her diagnosis and initial treatment were a part of the record prior to the ALJ's written

decision, and the ALJ considered them in his opinion.  At steps two and three, the ALJ found

that Petitioner's brain tumor did not meet the duration requirement for it to be either severe or

qualify as a listed impairment.  The ALJ found Petitioner was "recovering from this

impairment."  Because of her recovery and the report by her neurosurgeon, Dr. Smith, that she

was doing "pretty well," the ALJ determined that the brain tumor would "not significantly limit

the claimant for twelve or more months" and thus concluded that the "duration requirement for

an impairment [was] not met," and therefore not "severe."  (AR 19.)

The ALJ also found that Petitioner's brain tumor did not meet or equal a listed

impairment for the same reason he concluded the impairment was not severe.  The ALJ reasoned

that after Petitioner's brain tumor was surgically removed, Petitioner was "progressing well."

(AR 20.)  Consequently, the ALJ found that the impairment caused by the tumor had not lasted

nor was it expected to last for twelve months, and so it did not meet or equal a listed impairment.

(AR 20.)

Petitioner asserts that the findings concerning the duration requirement  were erroneous

for two reasons.  First, she argues that the symptoms of her brain tumor prior to its diagnosis on

August 21, 2006 (AR 306) were apparent, and that symptoms from her recovery, as well as

continuing treatment with radiation therapy, were expected to continue such that the duration

requirement was met.  Second, she contends that the ALJ failed to consider the combined effect

of Petitioner's multiple impairments when considering whether her impairments met the severity

requirement.  Petitioner further contends it was error for the ALJ to find that her brain tumor and

ovarian cysts did not equal a listed impairment, or that her multiple medical conditions and

resulting complications therefrom did not, in combination, meet a listed impairment.

For an impairment to meet the "severity" requirement, it must "significantly limit" one's

"physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Basic work

activities include physical functions such as walking, standing, sitting, and lifting; capacities for

seeing, hearing and speaking; understanding, remembering, and carrying out simple instructions;

using judgment; responding appropriately in a work situation; and dealing with changes in a

routine work setting.  20 C.F.R. § 404.1521(b).  Disability is defined, therefore, in terms of the

effect a physical or mental impairment has on a person's ability to function in the workplace.

*Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  Medical and other evidence must be furnished to

establish the existence of the disability.  *Bowen*, 482 U.S. at 146.  For most listed impairments,

"the evidence must show that the impairment has lasted or can be expected to last for a

continuous period of at least 12 months."  20 C.F.R. § 404.1525(c)(4).

The ALJ was required to evaluate Petitioner's tumor under the listing criteria in

Appendix 1, section 13.13.  20 C.F.R. Pt. 404, Subpt. P., App. 1, Section 11.00(B) (Neurological

Impairments); Section 13.00(K)(6) (Malignant Neoplastic Diseases).  The following types of

tumors are listed impairments:

> A.   Central nervous system neoplasms (brain and spinal cord),
>       as described in 1 or 2:
> 1.  Highly malignant tumors, such as Grades III and IV
> astrocytomas, glioblastoma multiforme, ependymoblastoma,
> medulloblastoma or other primitive neuroectodermal tumors
> (PNETs) with documented metastases, diffuse intrinsic brain stem
> gliomas, or primary sarcomas.
> 2.  Any central nervous system neoplasm progressive or recurrent
> following initial antineoplastic therapy.  OR
> B.   Peripheral nerve or spinal root neoplasm, as described in 1
>       or 2:
> 1.  Metastatic.
> 2.  Progressive or recurrent following initial antineoplastic therapy.

20 C.F.R. Pt. 404, Subpt. P., App. 1, Section 13.13.  If a claimant satisfies the criteria under a

listing and meets the twelve month duration requirement, the Commissioner must find the

claimant disabled without considering age, education and work experience.  20 C.F.R. §

404.1520(a)(4)(iii), (d).

Disorders of the digestive system are evaluated under Section 5.00.  Chronic ulcerative or

granulomatous colitis is a listed impairment, provided there is one of the following present:

> A.   Recurrent bloody stools documented on repeated
>       examinations and anemia manifested by hematocrit of 30
>       percent or less on repeated examinations; or
> B.   Persistent or recurrent systemic manifestations, such as
>       arthritis, iritis, fever, or liver dysfunction, not attributable
>       to other causes; or
> C.   intermittent obstruction due to intractable abscess, fistula
>       formation, or stenosis; or

**Memorandum Decision and Order - Page 8**

          D.      Recurrence of findings of A, B, or C above after total
                     colectomy; or

E.      Weight loss as described under Sec. 5.08.

20 C.F.R. Pt. 404, Subpt. P., App. 1, Section 5.05 (Digestive Impairments).

When a claimant has multiple impairments, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *Burch v Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). The claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lewis v Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). A finding of equivalence must be based upon medical evidence only. *Lewis*, 236 F.3d at 514 (citing 20 C.F.R. § 404.1529(d)(3)).

With respect to Petitioner's argument that the ALJ failed to consider the combined effects of her impairments, it is accurate to say that the ALJ did not discuss their effects in the aggregate. However, Petitioner did not offer any theory concerning how her Crohn's disease, brain tumor, ovarian cysts, GERD with hiatial hernia, migraines, and other ailments combined to equal a listed impairment. *See Lewis*, 236 F.3d at 514 (requiring claimant to prove that a combination of impairments meets a listing via a plausible theory). Rather, Petitioner simply wants the ALJ to conclude that her impairments equal a listing by virtue of their numerosity, but offers no actual or reasonable theory as to how the symptoms combine to meet a listing. Accordingly, the ALJ did not err in this regard.

The Court does find, however, that the ALJ's determination that Petitioner's symptoms from her brain tumor were not expected to last for twelve continuous months was in error. In making his determination, the ALJ relied solely upon one post-operative progress note dated

October 4, 2006.  (AR 19, 276).  The ALJ stated at step two in his opinion:

> On October 4, 2006, Dr. Smith reported that the claimant was
> doing "pretty well."  He reported that the claimant was walking
> without much assistance and noted that she has no headaches or
> nausea.  Based upon this record, I find no evidence that this
> impairment will significantly limit the claimant for twelve or more
> months and thus conclude that the duration requirement for an
> impairment is not met.

(AR 19.)  Similarly, at step three, the ALJ stated that "[s]urgery was performed to remove the

tumor and Ms. Wiggins is progressing well.  I find no evidence that this impairment has lasted or

is expected to last for twelve or more months.  Therefore, the requirements of a medical listing

cannot be met."  (AR 20.)

In basing his conclusion on one progress note, the ALJ failed to consider the record as a

whole, and therefore his conclusion is not based upon substantial evidence.  For instance, other

medical records indicated that the headache symptoms from Petitioner's brain tumor became

apparent as early as six months prior to her diagnosis on August 21, 2006.  (AR 306, 280-281,

266-268, 258-260.)  Petitioner actually complained of headaches as early as December 4, 2003.

(AR 164, 348.)  She also had blurred vision, ataxia, and pressure buildup behind her eyes for

some time prior to the tumor diagnosis.  (AR 266-268.)  By the time her brain tumor was

discovered, it measured 3.1 x 2.2 centimeters.  (AR 306.)  After Petitioner's craniotomy, she

immediately began radiation therapy, which in turn caused fatigue, to address the metastatic

nature of the tumor.  (AR 276, 313.)  The ALJ also omitted mentioning that Dr. Smith's October

4, 2006 treatment note confirmed that "the plan is to continue treatment," *i.e.*, radiation therapy,

because of  "metastatic melanoma to the posterior fossa."  (AR 276.)  So, while Petitioner may

have been doing "pretty well" on the date Dr. Smith examined her, the ALJ failed to consider Dr.

Smith's comment in the context of her actual precipitating symptoms and treatment regimen, and failed to consider the medical records as a whole. Accordingly, the ALJ committed error at steps two and three of the sequential process.

## B.  Petitioner's Credibility

Petitioner argues that there was no explanation given for rejecting her complaints and testimony concerning her fatigue, intermittent pain, chronic diarrhea from Crohn's disease, difficulty concentrating caused by her medical impairments and medications, and the resulting impact upon her physical and mental capacity to sustain work. The ALJ determined that Petitioner's statements concerning the intensity, persistence, and limiting effects of her pain and fatigue symptoms were not credible. (AR 21.)

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony.) Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 679. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The reasons

an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider: location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

In making his credibility determination, the ALJ concluded that Petitioner alleged a "significant number of restrictions and limitations which are not noted by any objective medical evidence." The ALJ gives as an example Petitioner's allegations that she has "one or two bad days each week in which she does not get out of bed. The records from Dr. Ward her treating physician does [sic] not indicate those problems or even that Ms. Ward [sic] reported those problems to him." (AR 22.) The ALJ also rejected Petitioner's complaints of fatigue and periods of total incapacity for two or more[4] days per week because those allegations are not supported by the medical evidence. The ALJ's conclusion is error under *Burch*, because an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical

---

[4] Petitioner testified that she had bad days "at least once a week, if not twice a week." (AR 400.)

evidence or the failure to report problems to one's physician. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

On the contrary, although Petitioner did not specifically state she had "bad" days to her physician, Petitioner reported symptoms to Dr. Ward consistent with her testimony at the hearing that she suffered a bad day "at least once a week" such that she was in pain, suffering from diarrhea, and thus her ability to work would have been compromised. Upon her initial admittance to the emergency room for a flare of Crohn's disease on August 6, 2003, she reported that she had sharp, crampy pain. (AR 104-106.) Afterward, she was prescribed Vicodin, a narcotic, for breakthrough pain, and continued to complain to her physician of intermittent fatigue along with pain and cramping. (AR 113-114, 157, 179, 146, 321, 177, 175, 180, 196, 353, 389.) Remicade treatment began in September 2003, resulting in joint aches and myalgias secondary to serum sickness. (AR 353.)

By January 2004, Petitioner had decreased bloody stools and diarrhea, but began experiencing an increase in headaches. (AR 160-164.) For a brief period between February and April, Petitioner was reported as doing well, with all of her systemic problems "controlled," and she was reported as "clinically stable" by Dr. Ward on April 13, 2004. (AR 345-346, 160.) Following this period, in May 2004, Petitioner again began complaining of an increase in symptoms, including fatigue, pain, diarrhea with bloody discharge, and headaches. (AR 150-172, 345, 315.) Dr. Ward prescribed medication, and was unable to control her pain, although it improved with medication by June 2004. (AR 151-157.) On July 9, 2004, Petitioner sought treatment for diarrhea, occurring four to five times per day, after having had worse diarrhea with blood the week prior as well as abdominal cramping. (AR 150.) By October 2004, her

symptoms had again improved, but they reappeared in January 2005, when Petitioner sought

follow-up for intermittent abdominal cramping, breakthrough pain several times per month

requiring ingestion of Librax three times per day to control it, and diarrhea up to five times per

day.  (AR 196.)

Petitioner's symptoms subsided presumably by August 2005, as there are no medical

records indicating a return of symptoms until March 2006, when her headaches precipitating her

brain tumor diagnosis began (AR 258-260), she was admitted to the hospital in April 2006 for

pneumonia caused by her diabetes (AR 374), and her brain tumor was finally diagnosed via a

head CT on August 21, 2006.  (AR 306.)  By the date of the hearing on July 28, 2006, when her

brain tumor was still undiagnosed, she was suffering from migraine headaches, blurred vision,

and ataxia.  (AR 280-281.)

The medical records, when considered as a whole, do not reasonably support the ALJ's

conclusion.  Although Petitioner's symptoms may have waxed and waned periodically, she

consistently sought treatment, sometimes several times per month, during periods of extreme

discomfort.  These periods of discomfort were marked by pain requiring narcotic medications,

bloody diarrhea up to five times per day, cramping, and fatigue.  These episodes are noted by

objective medical evidence, and the ALJ proffered no explanation for rejecting the medical

records indicating periods of incapacity consistent with Petitioner's described limitations, while

only considering medical records that supported his conclusion wherein Petitioner was noted to

be doing well during periods of reduced or absent symptoms.

The ALJ also mischaracterized the medical evidence, and the medical evidence thus

does not reasonably support the ALJ's conclusions.  For instance, he concluded that Petitioner's

bowel movements were "well controlled" if she was on her medications.  (AR 22.)  The ALJ also concluded that Dr. Ward in his medical reports "frequently found the claimant doing well.  He did occasionally report that she was experiencing bowel movements up to five times per day but it appears that these were unusual and treatable."  (AR 22).  On the contrary, during periods of increased symptoms, Petitioner's diarrhea was "controlled" at a level that still left her going to the bathroom up to three or four times per day, often with bloody discharge and cramping.  (*See, e.g.*, AR 162 (doing better, still three bowel movements per day); 155 (unable to control symptoms on Prednisone, still having diarrhea); 153 (pain improved with Prednisone, still having diarrhea); 148 (Crohn's stable on medications, no increase in diarrhea); 196 (cramping alleviated upon taking medication; diarrhea controlled at a level of one to five bowel movements per day with medication).  Even at the hearing, which lasted fifty minutes, Petitioner had to be excused to use the restroom.  (AR 402.)

The ALJ did not point out any inconsistencies between Petitioner's statements of her symptoms and limitations, especially during periods when her symptoms from Crohn's were severe, and the notes in her medical records.  Nor did the ALJ consider the limitations Petitioner described concerning her daily activities.  Petitioner described that she needed assistance with basic housework (AR 392); could not sit through religious services (AR 393); had difficulty sitting and standing (AR 397); and problems with memory and concentration (AR 401).  Apparently, because the ALJ did not believe Petitioner suffered from "bad" days, he took for granted that Petitioner's typical day on a good day represented Petitioner's consistent level of daily activity.  (AR 20-21.)

As stated above, it is the ALJ's job to determine credibility.  *See Meanel v. Apfel*, 172

F.3d 1111, 1113 (9th Cir. 1999).  If there is substantial evidence in the record to support the

ALJ's credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*,

278 F.3d 957, 959 (9th Cir. 2002).   If the evidence can support either outcome, the court may

not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

1999).  The issue is not whether the Court agrees with the ALJ's credibility assessment, but

whether the assessment is sound.   Here, the record lacks substantial evidence to support the

ALJ's finding that the Petitioner was not fully credible, as the ALJ only selectively considered

the objective medical evidence and did not consider the record as a whole.

The Court finds that, based on the above, when the record as a whole is reviewed,

substantial evidence does not support the ALJ's finding that Petitioner was not fully credible.

**C.      Residual Functional Capacity to Do Past Relevant Work and Hypothetical Posed to
            Vocational Expert.**

Because the ALJ rejected Petitioner's subjective complaints, Petitioner argues the

hypothetical relied upon by the ALJ in forming his opinion did not include all of Petitioner's

limitations that were supported by the record.  Petitioner therefore asserts that the ALJ's finding

that she could perform sedentary work, including her past work, was in error.  Petitioner

contends that the hypothetical posed to the vocational expert did not include all her limitations,

specifically her need to take frequent unscheduled bathroom breaks and also that she would

likely miss work due to any number of reasons, such as migraines, a Crohn's flare, or fatigue.

At the fourth step in the sequential process, the ALJ determines whether the impairment

prevents the claimant from performing work which the claimant performed in the past, *i.e.*,

whether the claimant has sufficient residual functional capacity to tolerate the demands of any

past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A claimant's residual

functional capacity is the most she can do despite her limitations.  20 C.F.R. § 404.1545(a).  An

ALJ considers all relevant evidence in the record when making this determination.  *Id.*

Generally, an ALJ may rely on vocational expert testimony.  20 C.F.R. § 404.1566(e); *Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  An ALJ must include all limitations supported

by substantial evidence in his hypothetical question to the vocational expert, but may exclude

unsupported limitations.  *Bayliss*, 427 F.3d at 1217.

Because the ALJ improperly determined Petitioner was not fully credible concerning her

need to use the restroom facilities, her frequent doctor's visits during a Crohn's flare, her fatigue

and intermittent abdominal pain, headaches, and her need to rest during the day, the hypothetical

he proposed to the vocational expert is not supported by substantial evidence in the record.  The

hypothetical posed to the vocational expert only included Petitioner's impairments related to her

Crohn's disease in reliance upon the RFC Assessment dated July 9, 2004.  (AR 406, 187-194).

The ALJ disregarded Petitioner's subjective pain, fatigue, and headache symptoms and their

effects, as well as the evidence concerning her brain tumor diagnosis after the hearing that

explained some of her subjective symptoms.  Thus, the ALJ posited that Petitioner could perform

a full range of sedentary work.  (AR 22.)

The ALJ's disregard of Petitioner's subjective complaints, as well as the symptoms and

treatment side effects of her brain tumor, caused him to overlook other important limitations on

Petitioner's ability to work, such as problems with missing work, frequent bathroom breaks, her

ability to actually sit or stand for prolonged periods without taking a rest in a reclining position,

or her ability to concentrate.  Also, the ALJ failed to consider the evidence submitted after the

hearing concerning her brain tumor.  As the Ninth Circuit has stated, the hypothetical questions

posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant supported by the record, including, for example, pain and an inability to lift certain weights.  If the vocational expert's hypothetical assumptions are incomplete or lack support in the record, the vocational expert's opinion has no evidentiary support.  *Emabrey v. Bowen,* 849 F.2d 418 (9th Cir. 1988).

The vocational expert here testified that, if an employee used sick leave more than two days per month, had to use the restroom more than a few times each day, or had to lie down more than an hour each day, all work would be precluded.  (AR 408-410.)  But, because the ALJ found those complaints by Petitioner not credible, the ALJ rejected Petitioner's characterization of her limitations.  Because the credibility determination was in error and the ALJ's RFC finding was based upon erroneous findings concerning credibility, so too was the ALJ's RFC determination.  Here, the Petitioner's testimony concerning her need to recline during the day, her Crohn's flare-ups and resultant pain, fatigue, and headaches that caused her to be bedridden at least once per week were not included in the hypothetical relied upon by the ALJ.  However, when those limitations were taken into account in an objective manner by asking if a person could perform sedentary work if an employee used sick leave more than two days per month, had to use the restroom more than a few times each day, or had to lie down more than an hour each day, all work would be precluded.  (AR 408-410.)

The Ninth Circuit recently noted how the failure to include all of the limitations that are supported by substantial evidence in the record can undermine the efficacy of a hypothetical question:

> As the Commissioner correctly recognizes, in hypotheticals posed to a vocational expert, the ALJ must only include those limitations

> supported by substantial evidence.  *See Osenbrock v. Apfel,* 240
> F.3d 1157, 1163-65 (9th Cir.2001).  Conversely, an ALJ is not free
> to disregard properly supported limitations.  The ALJ's failure to
> account for the testimony of Robbins and his son calls into
> question the validity of his determination of Robbins's limitations
> and RFC before September 1998.  Because those determinations
> were flawed, the hypothetical posed to the vocational expert was
> legally inadequate.  *Id.*  Such a failure cannot be deemed harmless
> because, if the ignored testimony is credited, a proper hypothetical
> would have included limitations which, the record suggests, would
> have been determinative as to the vocational expert's
> recommendation to the ALJ.  Accordingly, the ALJ's step five
> determination is unsupported by substantial evidence.  *See id.* at
> 1163 ("An ALJ must propose a hypothetical that is based on
> medical assumptions supported by substantial evidence in the
> record that reflects each of the claimant's limitations.").

*Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 886 (9th. Cir. 2006).

As in *Robbins*, the Commissioner's position regarding the propriety of the hypothetical

question rests on the premise that Petitioner's testimony regarding her disabling pain and other

functional limitations were not credible.  However, the ALJ did not follow the proper legal

standards for rejecting Petitioner's pain and fatigue testimony.  As such, the hypothetical

question, which was to include all of Petitioner's limitations that were supported by substantial

evidence, is an evidentiary and legal nullity.

**D.      Rejection of Medical Source Opinions.**

After the hearing, Petitioner submitted the opinions from her treating gastroenterologist,

Dr. Ward, and her neurologist, Dr. Smith.  The Appeals Council considered the two opinions,

concluding that the information did not provide a basis for changing the ALJ's decision.

Petitioner argues that there was no justification for rejecting these opinions.  Pet. Brief at 12, 13,

(Docket No. 24.)

Reports of treating physicians submitted relative to Petitioner's work-related ability are

persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)). Clear and convincing reasons must also be given to reject a treating doctor's ultimate conclusions concerning disability, especially when they are not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Dr. Ward in his letter (AR 361-362) stated that Petitioner has a "chronic intermittent history of multiple complaints from her Crohn disease" with resultant diarrhea that is "only under moderate control with medications. Along with her diarrhea she has intermittent abdominal cramping that is sometimes incapacitating. She has chronic fatigue . . . ." (AR 361.) In his opinion, "because of the frequency of these symptoms, particularly at times her very uncontrolled diarrhea and urgency as well as abdominal pain I feel it is impossible for her to hold any gainful employment." (AR 362). He also noted Petitioner's other medical conditions that complicated her illness, including diabetes and history of a brain tumor, "now with frequent headaches." (AR 361).

Dr. Smith filled out a Residual Functional Capacity Questionnaire. (AR 370-371.) He indicates he had follow up visits with Petitioner "monthly," and that she was diagnosed with "metatastic melanoma" with "poor" prognosis. Her symptoms included "headaches, weight loss,

fatigue, and weakness."  In his opinion, her symptoms would "frequently" interfere with attention and concentration, she could not walk without rest or pain, she needed to lie down or recline six hours in an average work day, could sit for thirty minutes at a time, stand and walk for ten minutes at a time, and could only sit two hours and stand one hour during an eight hour workday with normal breaks.  He also was of the opinion that Petitioner would need frequent breaks, and would likely miss work more than four times each month due to her condition.  (AR 371.)

The Appeals Council rejected both the opinions of Dr. Ward and of Dr. Smith.  (AR 6.)  In rejecting the opinion of Dr. Smith, the Council stated that the limitations were not supported by the record.  The Council noted that Dr. Smith "indicates that in part, you are unable to perform work related activities on a sustained basis because of headaches and weight loss.  However, the November 2006 progress note from Dr. Ward indicates that you denied headaches or weight loss."  (AR 6.)  The Council rejected Dr. Ward's opinion on the grounds that the record "shows that with medication [her] condition is fairly well controlled" and cites one progress note from 2006 when she reported she was "disease free," and that any increase in symptoms could be treated and again controlled.  (AR 6.)

The conclusions stated above are neither clear or convincing, nor are they supported by substantial evidence in the record as a whole.  First, the doctors' opinions are uncontradicted by another medical provider and support each other.  Second, in rejecting Dr. Smith's opinion, the Council failed to consider Petitioner's other symptoms documented by Dr. Smith, such as her fatigue and weakness, and his opinion that she would miss work up to four times each month.  Although in November 2006, Petitioner denied having headaches, the Council failed to consider

that her condition had reportedly changed in 2007, when Dr. Ward noted in his letter and in a progress note that her headaches had returned.  (AR 361, 363.)  The Council's opinion also ignores the medical record as a whole concerning its rejection of Dr. Ward's conclusions, especially the intermittent problems discussed above concerning Petitioner's Crohn's disease flare-ups, and that according to the medical records it could take several months before medication controlled Petitioner's symptoms to a manageable level that still left her suffering from breakthrough cramping and diarrhea up to three and sometimes five times a day.

## V.
## Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence and is the product of legal error.  Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be remanded.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the

premises, **it is hereby ORDERED that**:

1)      Plaintiff's Petition for Review (Docket No. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further proceedings

consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with 42

U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).



DATED: January 28, 2009

_____

Honorable Candy W. Dale
Chief United States Magistrate Judge